IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

LATOYA MAYERS :
805 Walnut Lane :
Mullica Hill, NJ 08062 : CIVIL ACTION NO.: _____
 :
       Plaintiff, : JURY TRIAL DEMANDED
 :
  v. :
 :
INSPIRA HEALTH NETWORK, INC. :
d/b/a INSPIRA MEDICAL CENTER :
MULLICA HILL :
1505 W. Sherman Ave. :
Vineland, NJ 08360 :
 :
       Defendant. :

---

## CIVIL ACTION COMPLAINT

Plaintiff, Latoya Mayers ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Defendant Inspira Health Network, Inc. d/b/a Inspira Medical Center Mullica Hill ("Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff brings this Complaint contending that Defendant has violated her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*, Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the New Jersey Law against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq.* In relevant part, Plaintiff contends that Defendant discriminated against her and ultimately terminated her employment because of her race and in retaliation for her complaints regarding the same.

## PARTIES

2. Plaintiff Latoya Mayers currently resides at 805 Walnut Lane, Mullica Hill, NJ 08062.

3. Upon information and belief, Defendant Inspira Health Network, Inc. d/b/a Inspira Medical Center Mullica Hill is a nonprofit corporation organized and existing under the laws of the State of New Jersey with a headquarters and principal place of business at 1505 W. Sherman Ave., Vineland, NJ 08360.

## JURISDICTION AND VENUE

4. On or about November 24, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e). Plaintiff's EEOC Charge was docketed as Charge No. 530-2021-00920. Plaintiff's EEOC Charge was filed within three hundred (300) days after the unlawful employment practice alleged herein.

5. By correspondence dated May 12, 2022, Plaintiff requested a Notice of Right to Sue as of right which was processed by the EEOC the same day, resulting in the closure of the EEOC's investigation the Charge and, upon information and belief, the issuance of a Dismissal and Notice of Right to Sue Notice.

6. On or about May 20, 2022, within the relevant statutory timeline, Plaintiff filed the instant matter.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

8. This action is authorized and instituted pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.* and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as Plaintiff's federal claims.

11. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as Defendant resides in this district and the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. Plaintiff began her employment with Defendant on or about November 18, 2019, in the position of Youth Development Specialist.

14. At all times material hereto, Plaintiff received positive reviews regarding her performance, occasional praise, and no justifiable discipline.

15. During her employment, Plaintiff was the only African American Youth Development Specialist at Defendant's Mullica Hill location.

16. In her capacity of Youth Development Specialist, Plaintiff first reported to Defendant's Acting Director, Angela LNU (Last Name Unknown), followed by Defendant's Executive Director, Brenda LNU (Last Name Unknown).

17. On or about January 20, 2020, Defendant hired a new Director, Laura Lilien ("Ms. Lilien"), who began reporting to work on or about January 22, 2020.

18. Shortly thereafter, on or about February 5, 2020, Ms. Lilien held a meeting with Plaintiff and her coworker, Melissa Padilla ("Ms. Padilla"), Counselor, to discuss different ideas for enhancing the youth program.

19. During this meeting, Ms. Lilien stated, *inter alia*, "Whites are smarter than Blacks."

20. Plaintiff subsequently complained to Defendant's Human Resources Department ("HR") about Ms. Lilien's racially discriminatory statement, which she found deeply offensive.

21. Defendant's Human Resources Department subsequently informed Ms. Lilien that Plaintiff had filed a discrimination complaint against her.

22. On March 3, 2020, Plaintiff emailed Denise Lambrecht ("Ms. Lambrecht"), Director of Labor Relations, to report her concerns that Ms. Lilien was acting unprofessionally towards her, including objecting (for the first time) to her playing music, leaving early without notifying her, and denying her the use of a spare laptop to help students complete resumes and job applications.

23. Plaintiff also told Ms. Lambrecht she had advised Ms. Lilien, who was refusing to allow her to use a particular office space to meet with students who wished to speak in private, that she felt she was being discriminated against because her other (non-African American) coworkers had access to the same office space.

24. As Plaintiff explained, when Ms. Lilien asked *why* Plaintiff felt she was being discriminated against, Plaintiff reminded her of the racially-insensitive remark she had made about white people being smarter than black people.

25. Ms. Lambrecht responded by advising Plaintiff she had spoken with Ms. Lilien about the investigation of Plaintiff's complaint and that "a thorough investigation need[ed] to be completed regarding the concerns [she] raised."

26. On March 6, 2020, Plaintiff advised Ms. Lambrecht as well as Evelyn Weise ("Ms. Weise"), Associate HR Business Partner, that she was experiencing a "hostile work environment" due to the investigation of her discrimination complaint.

27. On or around March 9, 2020, as a result of Defendant's HR's failure to take remedial and/or corrective action in response to Plaintiff's complaints of the racially discriminatory commentary by Ms. Lilien, Plaintiff contacted Defendant's Chief Executive Officer, Elizabeth Sheridan ("Ms. Sheridan"), and Defendant's Vice President of HR, Bridget Feery ("Ms. Feery"), and notified them of her complaint and Defendant's failure to take remedial and/or correction action in connection thereto.

28. In response, Plaintiff was advised that "the investigation [would] be completed no later than March 16, 2020."

29. Defendant failed to advise Plaintiff of the investigation's outcome by March 16, 2020.

30. Instead, on or around March 16, 2020, Plaintiff and her coworkers were sent home due COVID-19-related closures.

31. On or around May 18, 2020, Plaintiff contacted Ms. Sheridan and Ms. Feery to inquire about the investigation's outcome.

32. In response, Ms. Feery stated, "We didn't have time to reassign someone to your investigation."

33. Then, on or about May 20, 2020, just two (2) days after Plaintiff followed up with Ms. Sheridan and Ms. Feery about her discrimination complaint, Ms. Feery contacted Plaintiff and told her her employment was being terminated.

34. By way of explanation, Ms. Feery stated, "We see you're unhappy here" and told her, with respect to her termination, "maybe it's for the best."

35. Rather than investigate Plaintiff's complaints of discrimination on the basis of Plaintiff's race, Defendant retaliated against Plaintiff for filing those same complaints by terminating Plaintiff's employment.

36. Upon information and belief, Defendant had a continuing need for the work being performed by Plaintiff and subsequently replaced her with a non-African American individual.

37. Accordingly, it is believed and therefore averred that Plaintiff was terminated because of her race, and in retaliation for making good-faith complaints of discrimination and/or harassment on the basis of race in connection thereto, in violation of Title VII, Section 1981, and the NJLAD.

38. Plaintiff has, because of Defendant's wrongful termination of her employment, struggled to obtain other employment and has been and will be forced to expend significant out-of-pocket expenses on health care.

39. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential commissions and bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e, *et seq.***
**RACE DISCRIMINATION & RETALIATION**

40. Paragraphs 1 through 39 are hereby incorporated by reference as though the same were fully set forth at length herein.

41. Plaintiff, who is African American, is a member of a protected class under Title VII of the Civil Rights Act of 1964.

42. Plaintiff was subjected to harassment, as described above, on the basis of her race.

43. Plaintiff engaged in protected activity under Title VII by submitting internal complaints of race discrimination/harassment.

44. Plaintiff's employment was terminated on the basis of her race and/or in retaliation for her complaints of racial harassment and retaliation.

45. Upon information, Plaintiff was subsequently replaced by a non-African American individual.

46. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, and earnings potential, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

b) Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

c) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

    d)    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

    e)    Pre-judgment interest in an appropriate amount; and

    f)    Such other and further relief as is just and equitable under the circumstances.

**COUNT II**
**VIOLATIONS OF 42 U.S.C. § 1981**
**RACE DISCRIMINATION AND RETALIATION**

47.    Paragraphs 1 through 46 are hereby incorporated by reference as though the same were fully set forth at length herein.

48.    Plaintiff avers that Defendant discriminated against her with respect to the terms and conditions of her employment, and terminated her employment, on account of her race and in retaliation for her internal complaints of race discrimination. Plaintiff has suffered damages and seeks relief for these willful adverse actions.

49.    These actions as aforesaid constitute violations of 42 U.S.C. § 1981.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

    a)    Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00).

    b)    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

    c)    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

  d)  Pre-judgment interest in an appropriate amount; and

  e)  Such other and further relief as is just and equitable under the circumstances.

## COUNT III
## NEW JERSEY LAW AGAINST DISCRIMINATION
## N.J.S.A. 10:5-1, *et seq.*
## DISCRIMINATION & RETALIATION

  50. Paragraphs 1 through 49 are hereby incorporated by reference as though the same were fully set forth at length herein.

  51. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*

  52. Plaintiff, who is African American, is a member of a protected class under the NJLAD.

  53. Plaintiff was subjected to harassment, as described above, on the basis of her race.

  54. Plaintiff engaged in protected activity under the NJLAD by submitting internal complaints of race discrimination/harassment.

  55. Plaintiff's employment was terminated on the basis of her race and/or in retaliation for her complaints of racial harassment and retaliation.

  56. Upon information, Plaintiff was subsequently replaced by a non-African American individual.

  As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, and earnings potential, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation

  **WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

    a)    Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

    b)    Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

    c)    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

    d)    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

    e)    Pre-judgment interest in an appropriate amount; and

    f)    Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:   */s/ Michael Groh*
      Michael Murphy, Esquire
      Michael Groh, Esquire
      Eight Penn Center, Suite 2000
      1628 John F. Kennedy Blvd.
      Philadelphia, PA 19103
      TEL: (267) 273-1054
      FAX: (215) 525-0210
      murphy@phillyemploymentlawyer.com
      mgroh@phillyemploymentlawyer.com
      Attorneys for Plaintiff

Dated: May 20, 2022

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.